UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

STACEY A. GIBSON,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:12-cv-535
Dlott, J.
Litkovitz, M.J.

REPORT AND
RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 10), the Commissioner's Memorandum in Opposition (Doc. 15), and plaintiff's reply memorandum (Doc. 16).

I. Procedural Background

Plaintiff filed an application for SSI in May 2009, alleging disability since March 2009, due to chronic systolic heart failure.[1] (Tr. 161). Plaintiff's application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a de novo hearing before Administrative Law Judge (ALJ) Joseph P. Donovan, Sr. Plaintiff together with a medical expert (ME) and a vocational expert (VE) appeared and testified at the ALJ hearing. On February 7, 2011, the ALJ issued a decision denying plaintiff's SSI application. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

---

[1] Plaintiff also filed an application for disability insurance benefits (DIB) (Tr. 120-26), but the date last insured was December 31, 2008, and he did not pursue that application. (Tr. 120-26, 136, 138).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the

2

relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] has not engaged in substantial gainful activity since May 28, 2009, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The [plaintiff] has the following severe impairments: chronic alcohol-induced cardiomyopathy, chronic obstructive pulmonary disease (20 CFR 416.920(c)).
>
> 3. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that the [plaintiff] can frequently use hand/arm controls, use foot/leg controls, feel, finger, handle objects, reach, and reach overhead; can never climb ladders, ropes or scaffolds; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to extremes of cold; and must avoid concentrated exposure to airborne irritants.
>
> 5. The [plaintiff] is unable to perform any past relevant work (20 CFR 416.965).
>
> 6. The [plaintiff] was born [in] . . . 1965 and was 43 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).
>
> 7. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. The [plaintiff] has acquired work skills from past relevant work (20 CFR 416.968).[2]

9. Considering the [plaintiff's] age, education, work experience, and residual functional capacity, the [plaintiff] has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 416.969, 416.969(a) and 416.968(d)).

10. The [plaintiff] has not been under a disability, as defined in the Social Security Act, since May 28, 2009, the date the application was filed (20 CFR 416.920(g)).

(Tr. 12-18).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the

---

[2] Plaintiff's past relevant work was as a delivery route truck driver, scrap sorter, cabinet assembler, and stock clerk. (Tr. 17).

4

plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

The pertinent medical findings and opinions have been adequately summarized by the parties in their briefs and will not be repeated here. (Doc. 10 at 3-7; Doc. 15 at 1-6). Where applicable, the Court shall identify the medical evidence relevant to its decision.

Plaintiff assigns three errors in this case: (1) the ALJ erred in adopting the opinions of the medical expert, Dr. Charles Metcalf., M.D., and the state agency reviewing physician, Dr. Anton Freihofner, M.D., over the opinion of his treating physician, Dr. Stephanie Dunlap, D.O.; (2) the ALJ erred in rejecting the opinion of Dr. Dunlap as it relates to his functional capacity and rendering an RFC finding that does not accurately reflect his functional limitations; and (3) the ALJ posed a hypothetical question to the VE that did not accurately describe plaintiff's physical and mental impairments.

**1. The ALJ's weighing of the medical opinions**

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.

5

1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. § 416.927(c)(2)-(6) [SSI] in determining what weight to give the opinion. *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(3)-(6); *Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

Opinions from non-treating and non-examining sources are never assessed for "controlling weight." The Commissioner instead weighs opinions from these sources based on the examining relationship (or lack thereof), specialization, consistency, and supportability,

but only if an opinion from a treating source is deemed not to be controlling. 20 C.F.R. § 416.927(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. *Id.*

The classification of a medical source is a question of law which the Court reviews de novo. *Blakley*, 581 F.3d at 407 (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)). Any factual findings by the ALJ that bear on the question are accorded substantial deference. *Id.* Pursuant to 20 C.F.R. § 416.902, a physician qualifies as a "treating source" if the physician sees the claimant "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition(s)." A physician seen infrequently can be a treating source "if the nature and frequency of the treatment or evaluation is typical for [the] condition(s)." 20 C.F.R. § 416.902. A physician is a "nontreating source" if the physician has examined the claimant "but does not have, or did not have, an ongoing treatment relationship with" him. *Id.*

Here, plaintiff contends that the ALJ did not provide "good reasons" for discounting the opinion of Dr. Dunlap, his "treating physician," and adopting the opinions of the non-examining physicians, Dr. Freihofner and Dr. Metcalf. (Doc. 10 at 8-15). The Commissioner implicitly agrees in the response to the Statement of Errors that Dr. Dunlap was a treating physician but argues the ALJ was not required to give Dr. Dunlap's opinion controlling or significant weight. (Doc. 15 at 6-12). The Court finds for the reasons explained below that it is not clear from the ALJ's decision whether the ALJ classified Dr. Dunlap as a "treating source" or a "nontreating source" and whether the ALJ's findings that bear on the classification of Dr. Dunlap are entitled to deference.

7

In his decision, the ALJ did not refer to Dr. Duncan as a "treating physician" and did not expressly address whether Dr. Dunlap's medical opinion was entitled to controlling weight under the factors set forth in 20 C.F.R. § 416.927(c)(2). Instead, the ALJ assessed how much weight to give Dr. Dunlap's opinion under a section of the decision captioned "Relative Weight," where he found as follows:

> The undersigned gives some weight to Dr. Dunlap's opinion, as she personally examined the claimant. However, the [ALJ] notes that Dr. Dunlap reported 10 appointments with the claimant, but this is not substantiated by the record, which indicates that he was treated by Dr. Howard. . . ."[3]

(Tr. 16, citing Tr. 451).

The ALJ's finding concerning Dr. Dunlap's treatment relationship with plaintiff is not substantially supported because it does not take into account the factors that determine the classification of a medical source, and it misconstrues the evidence of record. Specifically, the ALJ erred by: (1) relying on misleading and mistaken testimony by the ME that Dr. Howard rather than Dr. Dunlap treated plaintiff for his cardiac impairment after a certain date; and (2) neglecting Dr. Dunlap's continued involvement in plaintiff's care at University Hospital's Heart Failure/Transplant Care Clinic.

At the ALJ hearing, the ME, Dr. Metcalf, testified about the records related to plaintiff's cardiac impairment. Based on his review of the records, Dr. Metcalf stated that Dr. Howard "[took] over" plaintiff's case in January of 2010. (Tr. 33). In response to questioning by the ALJ about the September 2010 cardiac RFC assessment completed by Dr. Dunlap[4], Dr. Metcalf

---

[3] The ALJ went on to find that Dr. Dunlap's opinion that plaintiff was very restricted by impairments was not supported by an echocardiogram she cited; her statement that plaintiff would miss about four days of work a month was not supported by any medical evidence; her finding about plaintiff's lifting ability was contradicted by his activities of daily living; and her opinion about plaintiff's impairments was inconsistent with the opinions of Drs. Freihofner and Metcalf. (Tr. 16).

[4] Dr. Metcalf was not provided with Dr. Dunlap's September 2010 cardiac assessment prior to the hearing. At the hearing, the ALJ read portions of Dr. Dunlap's report into the record. (Tr. 31-32).

8

stated he had not seen Dr. Dunlap's name and he did not know who she was, and he reiterated that Dr. Howard had taken over plaintiff's case. (Tr. 34-35). In fact, the record shows that Dr. Howard was a general internal medicine resident physician at University Hospital's Hoxworth Clinic who treated plaintiff at the Hoxworth Clinic for various health issues during the same time period he was being treated at the Heart Failure Clinic for his cardiac impairment. (*See* Tr. 390- 1/4/10 letter of Dr. Howard stating: "Mr. Gibson has severe heart failure and high blood pressure and has been seen by the Hoxworth Clinic since June, 2009 and by the Heart Failure clinic since May 2009, both at University Hospital"; *see also* Hoxworth Clinic treatment notes - Tr. 491-95- 5/7/10; Tr. 481-84- 6/24/10; Tr. 467-71- 9/23/10; Tr. 457-60- 10/21/10). The ALJ accepted the ME's mistaken testimony that Dr. Howard assumed plaintiff's care from Dr. Dunlap in January 2010 by indicating in his decision that Dr. Howard, not Dr. Dunlap, was the physician who had treated plaintiff. (Tr. 16).

In addition, although the ALJ found that the record failed to substantiate Dr. Dunlap's report of ten visits with plaintiff, the record shows that plaintiff was treated for hypertensive cardiomyopathy beginning in May 2009 at the Heart Failure Clinic where Dr. Dunlap was the Director. (Tr. 322- 8/7/09 Dr. Dunlap letter). The record verifies regular visits by plaintiff to the Heart Failure Clinic between May 2009 and August 2010. (Tr. 309-11- 5/12/09; Tr. 300-01- 6/25/09; Tr. 298-99- 8/3/09; Tr. 296-97- 9/18/09; Tr. 294-95- 10/19/09; Tr. 351-52- 12/7/09; Tr. 401-02- 1/5/10; Tr. 485-490- 5/11/10; Tr. 475-80- 8/10). Although plaintiff was seen by another provider at the clinic on each of these dates, Dr. Dunlap is listed as a "physician of record" for at least four of these visits. (Tr. 309-11- 5/12/09; Tr. 300-01- 6/25/09; Tr. 294-95- 10/19/09; Tr. 401-02- 1/5/10). Moreover, Dr. Dunlap signed the record as the provider on September 3, 2010, for plaintiff's cardiopulmonary exercise test evaluation. (Tr. 472-73). Dr. Dunlap also prepared

9

three reports and letters concerning plaintiff's status and condition: a basic medical assessment in approximately May of 2009 (Tr. 235-36); an August 2009 letter (Tr. 322); and a cardiac RFC questionnaire on September 2, 2010, in which she stated that the nature, frequency and length of contact was as follows: "5/12/09 First visit for Dilated Cardiomyopathy with heart failure[.] Has had 9 additional visits for titration of medications and testing." (Tr. 451-56).[5] There is no indication in the ALJ's decision that he took into consideration any of this evidence of Dr. Dunlap's continued involvement in plaintiff's treatment. The ALJ did not discuss either plaintiff's visits to the Heart Failure Clinic or Dr. Dunlap's role in his care at the clinic. It is therefore not clear from the ALJ's decision whether the ALJ overlooked Dr. Dunlap's connection with the Heart Failure Clinic where plaintiff was regularly treated over a period of at least 15 months, or whether he discounted the significance of Dr. Dunlap's position at the clinic and role in plaintiff's care when deciding how to classify Dr. Dunlap.

The Court acknowledges that factual findings by the ALJ that bear on the classification of a medical source and which are supported by substantial evidence must be accepted by the Court, even if the Court might reach the opposite conclusion. *Smith,* 482 F.3d at 876 (citing 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.,* 474 F.3d 830, 833 (6th Cir. 2006); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007)). In this case, however, the Court is unable to discern how the ALJ classified Dr. Dunlap and the basis for the classification determination. The ALJ did not make specific findings regarding plaintiff's treatment relationship with Dr. Dunlap pursuant to 20 C.F.R. § 416.902, including the nature and frequency of Dr. Dunlap's examinations. The ALJ's findings raise questions as to whether the ALJ was aware of Dr.

---

[5] Plaintiff's diagnoses included "New York Heart Association Class III Dilated Cardiomyopathy (425.4) with chronic systolic heart failure 428.22." (Tr. 451).

10

Dunlap's role at the Heart Failure Clinic and whether the ALJ mistakenly believed Dr. Howard assumed plaintiff's cardiac care once this physician began treating him at the Hoxworth Clinic.

In light of these unresolved factual issues, the Court is unable to engage in a meaningful review of the ALJ's decision. The ALJ's reasoning is not "sufficiently specific to make clear" whether the ALJ recognized Dr. Dunlap as a treating physician and whether he evaluated her treatment relationship with plaintiff in accordance with the requirements of 20 C.F.R. § 416.927. *See Blakley*, 581 F.3d at 409 (citing SSR 96-2p, 1996 WL 374188, at *5). Accordingly, this matter should be reversed and remanded for further factual development on the appropriate classification of Dr. Dunlap's opinion in accordance with the definitions set forth in 20 C.F.R. § 416.902 and for a re-weighing of Dr. Dunlap's opinion in accordance with the factors set forth in 20 C.F.R. § 416.927.

### 2. The ALJ's RFC finding

Plaintiff alleges as his second assignment of error that the ALJ erred by rejecting the opinion of Dr. Dunlap as it relates to his functional capacity and rendering an RFC finding that does not accurately reflect his functional limitations. (Doc. 10 at 15-16). Plaintiff contends that the ALJ erroneously adopted the assessment of the medical expert, Dr. Metcalf, which was based on an incomplete record and which failed to take into account plaintiff's lung disease. Plaintiff argues that because Dr. Metcalf's assessment of his functional limitations did not comply with 20 C.F.R. § 416.945(a)(2), which requires that the claimant's RFC be assessed "based on all the relevant evidence in [the claimant's] case record," the ALJ's decision is not supported by substantial evidence. (Doc. 10 at 16).

The Commissioner admits that Dr. Metcalf did not review all of the record evidence, including Exhibits 21F through 25F. The Commissioner asserts, however, that the ALJ

11

"summarized" these records for Dr. Metcalf at the hearing and reasonably concluded that Dr. Metcalf's opinion was "more consistent with the record." (Doc. 15 at 13). The Commissioner also argues that the ALJ's RFC finding accounts for plaintiff's lung disease by limiting concentrated exposure to airborne irritants and cold temperatures, and the Commissioner cites medical evidence that purportedly supports these limitations. (Doc. 15 at 15-16).

The ALJ gave "great weight" to Dr. Metcalf's testimony in assessing plaintiff's RFC, asserting, in part, that Dr. Metcalf "had the benefit of reviewing the totality of the medical evidence." (Tr. 16). This is factually incorrect. Dr. Metcalf testified by telephone and stated that he had not received or reviewed Exhibits 21F through 25F of the record. (Tr. 31). These records include Dr. Dunlap's Cardiac RFC questionnaire (Tr. 436-441, 451-456); a September 2010 medical report from Dr. Howard stating that in addition to severe heart failure and high blood pressure, lung tests revealed a severe obstruction which makes it difficult for plaintiff to breathe with any activity (Tr. 442); the results of tests at University Hospital's Pulmonary Function Lab showing a moderately severe obstructive defect (Tr. 443-444); University Hospital radiology tests of March 2, 2010 (Tr. 445-450); records of five office visits with Dr. Howard through University Hospital's Internal Medicine Resident Program for the period of April 2010 through October 2010 (Tr. 457-460, 467-471, 481-84, 491-496, 497-502); and records of four office visits to the Heart Failure Clinic from May 2010 through September 2010 (Tr. 461-466, 472-73, 474-480, 485-490). While the Commissioner contends that the ALJ "summarized" these records for Dr. Metcalf, in reality the ALJ read into the record only a portion of Dr. Dunlap's RFC questionnaire (Tr. 31-32) and a portion of Dr. Howard's September 2010 letter (Tr. 36) (omitting the reference to lung tests which revealed a severe obstruction) and did not summarize the other records listed above. As a result, Dr. Metcalf testified that his review of the record

12

revealed "only the cardiac impairments." (Tr. 32). Dr. Metcalf questioned Dr. Dunlap's assessment but admitted that because he had not actually seen the assessment, "I can't say she's wrong. I just don't know." (Tr. 36). Dr. Metcalf did not have the benefit of a review of the entire record, and the ALJ's stated reason for giving "great weight" to his opinion is factually incorrect and unsupported.

The ALJ also found that plaintiff suffers from a severe lung impairment of chronic obstructive pulmonary disease (COPD). (Tr. 12). However, the opinions of the non-examining physicians, Drs. Freihofner and Metcalf, which the ALJ gave "great weight" (Tr. 15, 16), were based solely on plaintiff's cardiac impairment. Dr. Freihofner, who reviewed the record on October 22, 2009 (Tr. 323-330), did not have evidence of plaintiff's severe lung impairment before him because evidence of the impairment arose after his review, and Dr. Metcalf did not have any records of plaintiff's lung impairment before him. (Tr. 40). There is no indication that the ALJ took these physicians' failure to evaluate plaintiff's severe lung impairment into account when weighing their opinions. The non-examining physicians' opinions were not based on a complete record and do not provide substantial evidence for the ALJ's opinion. *See Blakley*, 581 F.3d at 409 ("we require some indication that the ALJ at least considered [subsequent medical evidence by treating sources] before giving greater weight to an opinion that is not 'based on a review of a complete case record.'").

Because relevant medical evidence was not presented to the medical sources on whose opinions the ALJ relied in formulating the RFC, this matter should be reversed and remanded for consideration of such evidence.

### 3. The hypothetical posed to the VE

Plaintiff alleges as his third assignment of error that the ALJ relied upon a flawed hypothetical propounded to the VE in exploring the number of jobs available for an individual with plaintiff's limitations. Specifically, plaintiff alleges that the ALJ failed to account for the functional limitations found by Dr. Dunlap, including the need for breaks during the work day and the likelihood that plaintiff would be absent from work about four days a month, as well as non-severe impairments which include depression, anxiety, side effects from medication, pain, and fatigue. (Doc. 10 at 16-17).

The hypothetical that was propounded to the VE relied on medical testimony that was based on an incomplete review of the record. Dr. Metcalf did not have before him a number of medical records, including Dr. Dunlap's September 2, 2010 cardiac RFC assessment and records pertaining to plaintiff's COPD, which included the results of a pulmonary function test. (Tr. 34-40). Because the hypothetical relies on medical testimony that was based on an incomplete review of the record, the hypothetical question propounded by the ALJ suffers from the same deficiencies as the RFC assessment. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789 (6th Cir. 2009) (ALJ erred in relying on answer to hypothetical question because it simply restated RFC which did not accurately portray claimant's physical impairments). Additional vocational expert testimony should be elicited on remand if warranted.

### III. This matter should be reversed and remanded for further proceedings.

This matter should be reversed and remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of his alleged onset date. *Faucher v. Sec. of HHS*, 17 F.3d

14

171, 176 (6th Cir. 1994). Accordingly, this matter should be reversed and remanded to the Commissioner to determine the appropriate classification of Dr. Dunlap's opinion in accordance with the definitions set forth in 20 C.F.R. § 416.902, to reassess the weight to afford Dr. Dunlap's opinion, and to obtain additional medical testimony and vocational evidence as warranted.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 6/20/13

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

STACEY A. GIBSON,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:12-cv-535
Dlott, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

16